# MISSOURI, *ex rel.* LACLEDE GAS LIGHT COMPANY
## *v.* MURPHY.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 47.   Argued March 1, 2, 1898. — Decided April 11, 1898.

The Supreme Court of Missouri having held that the act of the legislature
   of that State incorporating the Laclede Gas Light Company and confer-
   ring upon it the sole and exclusive privilege of lighting the streets in
   parts of St. Louis, though construed to include the right to use elec-
   tricity for illuminating purposes in respect to such right, was taken
   subject to reasonable regulations as to its use, and that the power to
   regulate had been delegated to the city of St. Louis, and that under its
   general public power the city had the right to require compliance with
   reasonable regulations as a condition to using its streets for electric
   wires, this court concurs with the conclusion of the Supreme Court
   that the company was subject to reasonable regulations in the exercise
   of the police powers of the city, and holds that, so far as that involved
   any Federal question, such question was correctly decided.
If the company, as it asserted, possessed the right to place electric wires
   beneath the surface of the streets, that right was subject to such reason-
   able regulations as the city deemed best to make for the public safety
   and convenience, and the duty rested on the company to comply with
   them.
If requirements were exacted or duties imposed by the ordinances, which,
   if enforced, would have impaired the obligations of the company's con-
   tract, this did not relieve the company from offering to do those things
   which it was lawfully bound to do.
The exemption of the company from requirements inconsistent with its
   charter could not operate to relieve it from submitting itself to such
   police regulations as the city might lawfully impose; and until it had
   complied, or offered to comply, with regulations to which it was bound
   to conform, it was not in a position to assert that its charter rights were
   invaded because of other regulations, which, though applicable to other
   companies, it contended would be invalid if applied to it.
The Supreme Court of Missouri did not feel called on to define in advance
   what might, or might not, be lawful requirements; and there is nothing
   in this record compelling this court to do so.
On a writ of error to a state court this court cannot revise the judgment
   of its highest tribunal unless a Federal question has been erroneously
   disposed of.

THE Laclede Gas Light Company filed its petition for man-
damus in the name of the State of Missouri, on its relation,

against Michael J. Murphy, street commissioner of the city of St. Louis, on November 26, 1894, in the Supreme Court of that State.

This petition stated that the relator was incorporated by an act of the general assembly of Missouri, approved March 2, 1857, which was amended by an act approved March 3, 1857, and by an act approved March 26, 1868; and set forth the three acts *in extenso.*

The fifth section of the act of March 2, 1857, read as follows:

"§ 5. The said company, its successors and assigns, shall, within all that portion of the present corporate limits of the city of St. Louis, in St. Louis county, not embraced within the corporate limits of said city, as established by the act entitled 'An act to incorporate the city of St. Louis,' approved February 8, 1839, have and enjoy, during the continuance of this act, the sole and exclusive privilege and right of lighting the same, and of making and vending gas, gas lights, gas fixtures, and of any substance or material that may be now or hereafter used as a substitute therefor; and to that end, may establish and lay down, in said portion of said corporate limits, all pipes, fixtures or other thing properly required, in order to do the same, (the same to be done with as much dispatch and as little inconvenience to the public as possible,) and shall also have all other powers necessary to execute and carry out the privileges and powers hereby granted to said company."

The words "sole and exclusive" in the fifth section were stricken out by the act of March 3, 1857. Laws Missouri, 1856–57, pp. 598, 599.

Section one of the act of March 26, 1868, (amending the act of March 2, 1857,) was as follows:

"Section 1. The said Laclede Gas Light Company shall and may, within the corporate limits of the city of St. Louis, as the same are now or may hereafter be established, exercise, have, hold and enjoy forever all the rights, privileges and franchises granted to it by the fifth section of the act to which this act is amendatory, and may, at any time, lease, sell or dispose of any portion of said rights, privileges and

franchises to individuals, associations or corporations intend-ing or desiring to exercise the same within any portion of the limits aforesaid." Laws Missouri, 1868, p. 187.

The petition then averred that the act of March 2, 1857, as amended by the subsequent acts, constituted relator's charter, by which relator was granted the privilege and right of light-ing the city of St. Louis as in the acts set forth ; " and to that end may establish and lay down in any portion of said corporate limits all pipes, fixtures or other thing properly required in order to do the same, with this limitation only, that in laying down pipes, fixtures or other thing properly required therefor relator shall do the same with as much dispatch and as little inconvenience to the public as possible."

It was further stated that by a certain agreement, executed February 28, 1873, relator had "abandoned and surrendered any and all exclusive rights and all claims or pretences of claims of sole or exclusive privilege or right of lighting any part of the city of St. Louis with gas, or making or vending gas, gas lights or gas fixtures, and also all exclusive right whatsoever under its said charter."

The petition went on to say that in pursuance of its charter relator had been for a long time engaged in the lighting business, both by gas and electricity ; that under a contract with the city it was lighting a part of the public streets and alleys by electricity, and would be obliged to do so for some years to come ; that it was furnishing light by means of gas or electricity to a large part of the inhabitants of the city ; that in order to fulfil its obligations to the city and the public the company had erected and was maintaining "extensive and costly plants for the manufacture and distribution of gas as well as for generating and distributing electric currents ;" that for distributing gas it had constructed a system of pipes laid under ground, without objection ; that for the distribution of electricity it had "hitherto used overhead wire strung upon poles along the streets and alleys of said city," which poles and electric wires had been and are maintained and used by relator without objection by said city or the authorities thereof for the distribution of electricity, as well to furnish

light to private consumers as for the fulfilment by relator of its said contract with said city of St. Louis for the lighting by electricity of certain public streets and alleys thereof ; that to effect such distribution it is necessary to transmit through and by means of said wires electric currents of great power, which if and when accidentally diverted are dangerous to human life and property ; that in order to avoid the inconvenience and danger to the public necessarily incident to that method of distributing electric currents, and in order to provide more effective and proper service relator has made arrangements to lay its wires underground along and under the streets of said city according to approved and practicable plans, and is now ready to do so with as much dispatch and as little inconvenience to the public as possible.

It was then stated that Murphy was street commissioner, to whom was committed, under the city charter, " the supervision and control of the streets and alleys of said city and the enforcement of city ordinances relating thereto." And relator averred that, having completed its preparation to carry out the work above indicated, and having given notice to the street commissioner of its intention to do so, the company proceeded, on the 30th day of October, 1894, to begin the work of excavating at a point on the east side of Broadway street in St. Louis, near the corner of Mound street, that point being adjacent to its generating plants, which work was proper and necessary for placing wires under ground, when the street commissioner caused the work to be stopped, and notified relator " that he would not allow any part of any street of said city to be excavated for any purpose whatever without a permit previously obtained from him for that purpose, as provided by ordinance ; and relator states that by section 568, article I, chapter 15, of the Revised Ordinance, 1887, of said city of St. Louis, it is provided that ' no person shall make or cause to be made any excavation on any public street, highway or alley without written permission of the street commissioner so to do, excepting public work under the authority of the water or sewer commissioner, who at the time of ordering any such excavating shall notify the street commissioner of the same.' "

That upon being so notified the company applied to the street commissioner for a permit to make the necessary excavation on Broadway, so that it might place its wires under the street for the purposes indicated. That the officer refused to give the permit asked, whereby, it was alleged, the company, in the exercise of its vested rights, was prevented from laying down in the streets of the city the pipes and fixtures required in the conduct of its business.

That it was the duty of the street commissioner to grant the permit; and, being without other remedy, relator prayed a mandamus against that officer, commanding him to issue a permit to the company to make an excavation along the east side of Broadway street, as near the curb as practicable, and extending from the southeast corner of Mound street to the southeast corner of Olive street and Broadway, in so far as was necessary for the laying of the company's electric wires under ground, "the same to be done with as much dispatch and as little inconvenience to the public as possible."

An alternative writ of mandamus having been issued, the street commissioner filed his return thereto, alleging therein that the act of March 26, 1868, was in conflict with paragraph 2 of section 1 of article VIII of the constitution of Missouri of 1865, because the company did not, within one year from the time the act of March 2, 1857, took effect, organize or commence the transaction of its business; and not until 1873; and that said act was in conflict with Sec. 25, Art. 4, of the constitution of Missouri, because it did not set forth the act or part of act amended at length as if it were an original act or provision.

That relator had never by any act been granted the franchise to make and vend electricity for any purpose whatever; and that lighting by electricity was wholly unknown March 2, 1857, and March 26, 1868.

"That the relator has heretofore placed its pipes and fixtures beneath the surface of the street on the east side of Broadway, from Mound street to Olive street, and at divers and sundry other places beneath the surface of the streets of the city of St. Louis, for the purpose of transmitting and

vending and supplying gas to consumers in the city of St. Louis; that in order to convey electricity it is necessary to carry the same by means of wires strung on poles above the surface of the streets or by means of wires strung in non-conductive tubes or conduits beneath the surface of the streets, and that relator has never acquired from the State of Missouri or the city of St. Louis any right to place such wires above or beneath the streets of said city.

" That it is provided by sec. 2721 of art. 5 of chap. 42, Rev. Stats. 1889, that no company shall place its wires and other fixtures under ground in any city unless it shall first obtain consent from said city, through the municipal authorities thereof.

" And that it is provided by art. 2, chap. 15, Rev. Ordinance of the city of St. Louis, 1887, as the same has been amended by Ordinance No. 16,894, that no wires, tubes or cables conveying electricity for the production of light, heat or power shall hereafter be placed along or across any of the streets, alleys or public places in the city of St. Louis by any person, corporation or association not having, previous to the passage of this ordinance, accepted and complied with Ordinance No. 12,723, now amended, or shall be duly authorized by the municipal assembly, and then only upon condition that such person, corporation or association so authorized by ordinance, before placing its wires, tubes and cables under ground, shall file in the office of the board of public improvements an application therefor, stating in detail the streets, alleys or public places which said wires, tubes or cables are to occupy, and the manner in which said wires, tubes or cables are to be secured or supported and insulated, together with a plat showing the route of such wires, tubes and cables, and that thereupon, if the same is approved, the board of public improvements shall grant a permit therefor, subject to such restrictions, regulations and qualifications as may be prescribed by said board, and all such work shall be done under the supervision of and to the satisfaction of the supervisor of city lighting; and that whenever an alley is available for placing such wires, tubes or cables, the same shall be placed in or under alleys and not

along or under streets; that relator has never accepted the provisions of said article and chapter, nor of said Ordinance No. 16,894, nor has it ever been authorized by the municipal assembly of St. Louis to place its wires, tubes and cables under the streets or alleys of St. Louis.

"Respondent further shows unto the court that said ordinance provisions are legal and binding and valid provisions, and such as the city of St. Louis had the right to adopt and enact under par. 2 of sec. 26 of art. 3 of the charter of St. Louis, which gives said city the power to regulate the use of all streets, avenues, alleys and so forth in said city, and such ordinance provisions are legal enactments, notwithstanding any rights which relator now has or may heretofore have had, by virtue of any act of the general assembly of the State of Missouri.

"Respondent further shows unto the court that relator has never made application to the board of public improvements for a permit to place its wires, tubes and cables under ground in said city, nor has it complied in any manner with any of the ordinance provisions aforesaid, and that respondent has not the power to grant any such permit as is asked for by relator in this case."

The relator moved to strike out certain portions of the return, and demurred to certain other portions thereof, assigning, among other grounds, that its "charter was and is a contract between the State of Missouri and said corporation, not subject to alteration, suspension or repeal except with the consent of said corporation, and that any constitutional provision, law or municipal ordinance adopted or enacted after said date, by or by authority of said State or by any municipality thereof, inconsistent with any right, privilege or franchise granted by said charter to relator or the effect of which would be to deny to relator any such right, privilege or franchise, or to annex to the full exercise thereof by relator any condition or requirement not prescribed by said charter, would be in contravention of section fifteen of article II of the constitution of Missouri, 1875, forbidding the general assembly to pass any law impairing the obligation of contracts, and

also of section 10 of Article I of the Constitution of the United States, forbidding any State to pass any such. law."

That "the provisions of said ordinance of said city of St. Louis in said portion of said return mentioned, if held valid or binding upon relator, would necessarily impair the obligation of the contract between relator and said State of Missouri, contained in said charter, by annexing to the exercise by relator of the rights and privileges by said charter granted to it certain conditions and requirements not prescribed by said charter, and which it does not appear nor is by respondent averred that the relator has ever consented to or accepted."

On the issues thus presented, the Supreme Court heard the cause and denied the peremptory writ.

Subsequently on the application of relator the judgment was set aside; the demurrer to the return and motion to strike out parts thereof were overruled; and leave was given to plead over.

Relator thereupon filed a traverse to the return, setting forth at length the grounds on which relator denied that the averments in the return in respect of the organization of the company and of the time when it commenced the transaction of business, and of the invalidity of the act of March 26, 1868, constituted defences to the proceeding.

The traverse further stated that, if electricity was not a substance or material as averred by respondent, which relator denied, that constituted no defence. That relator was incorporated to carry on the business of lighting the city of St. Louis, and the right and privilege of doing so was granted, as before set forth and reiterated. The traverse explained the process of lighting by gas, and also by electricity, which relator asserted was included in the grant; admitted that the company had theretofore exercised its corporate franchise of lighting the city with gas through pipes laid beneath the surface of the street on the east side of Broadway from Mound street to Olive street, and in other places; that to furnish light by means of electricity it was necessary to use wires "either on poles above the surface of the street, as relator is

now doing under a contract with said city of St. Louis, or in tubes or conduits beneath said surface;" and that "its purpose in making the excavation on Broadway mentioned in the petition was to construct and place under ground a conduit for wires, such conduit and wires being properly required for the production of electric light as a substitute for gas light;" and set forth that the conduit and wires so intended to be laid down were of the most approved description, offering no obstruction, and avoiding the danger to life and property attending the use of overhead electric wires.

The traverse denied that relator had not acquired the right to place such wires above or beneath the streets; and denied that section 2721 of article V, chapter 42, Revised Statutes of Missouri, 1889, applied to relator, but averred that if it did, its provisions would be invalid as impairing the obligation of the contract contained in its charter.

The traverse admitted that by article two, chapter fifteen, Revised Ordinance of St. Louis of 1887, as amended by Ordinance No. 16,894, the municipal authorities undertook to prescribe certain conditions for placing wires, tubes or cables conveying electricity along, across or under the streets and alleys of the city; and averred that said ordinance and the amendatory Ordinance No. 16,894 are the same ordinances revised and reënacted in article II of chapter 15 of the Revised Ordinance of 1892, by an Ordinance No. 17,188, approved April 7, 1893, and that sections 603 to 614 are the only provisions prescribing regulations or conditions in respect of placing along, across or under any of the streets, alleys and public places of wires, tubes or cables conveying electricity for the production of light, heat or power, and are the provisions insisted on by respondent. These sections were set out in the traverse and are printed in the margin.[1]

---

[1] § 603. That no wires, tubes or cables conveying electricity for the production of light, heat or power shall hereafter be placed along or across any of the streets, alleys or public places in the city of St. Louis, by any person, corporation or association not having, previous to the passage of this ordinance, accepted and complied with ordinance number twelve thousand seven hundred and twenty-three, now amended, or shall be duly

The traverse then proceeded :

"Relator denies that the requirements of said city ordinances set forth were or are legal and binding and valid provisions so far as the rights of this relator under its charter

authorized by the municipal assembly, and then only as hereinafter provided.

§ 604. All such wires, tubes or cables, along or across any of the streets, alleys or public places of the city of St. Louis, shall be placed at such distances above or below the surface of the ground, and secured in such manner as shall be prescribed by the board of public improvements.

§ 605. That any person or persons, corporation or association, duly authorized by ordinance to do business in the city of St. Louis, and desiring to place along or across any of the streets, alleys or public places of the city of St. Louis, such wires, tubes or cables, shall file in the office of the board of public improvements an application therefor, stating in detail the streets, alleys or public places which said wires, tubes or cables are to occupy, and the manner in which said wires, tubes or cables are to be secured or supported and insulated, together with a plat showing the route of such wires, tubes or cables.

§ 606. The board of public improvements is hereby authorized, upon the filing of the application and plat required by the preceding section, to grant a permit for such occupancy of the streets, alleys and public places herein named, with such restrictions, regulations and qualifications as may be prescribed by said board, and under the supervision and to the satisfaction of the supervisor of city lighting.

§ 607. That in case any person or persons, corporation or association, duly authorized by ordinance, desiring to place along or across any of the streets, alleys or public places of the city of St. Louis, such wires, tubes or cables, shall, with the application and plat heretofore provided for, file in the office of the board of public improvements the written consent of any telegraph or telephone company, or any other electric light or power company, doing business in the city of St. Louis, to the placing of such wires, tubes or cables upon the poles of said telegraph, telephone, electric light or power company, situated in the streets, alleys or public places named in such application, the board of public improvements is hereby authorized to grant a permit for such occupancy of the poles of such telegraph, telephone, electric light or power company, with such restrictions, regulations and qualifications as may be prescribed by said board, and under the supervision and to the satisfaction of the supervisor of city lighting.

§ 608. That whenever an alley is available for the placing of poles for the support of such wires, tubes or cables, the board of public improvements will advertise for five days previous to a day set for hearing objections or arguments in favor of placing the said poles in the alley. If, after due consideration, the board of public improvements are of the opinion

were or are concerned, and denies that as against this relator said city of St. Louis had or has the lawful right or power to adopt or enforce the same, whether under the provisions of paragraph 2 of section 26 of article III of the charter of said

that the placing of poles for the purposes aforesaid is practicable, such poles shall be placed along said alley instead of along the street named in application. Where the poles are set in any alley they shall be located as near the side lines of the alley as practicable, and in such a manner as not to incommode the public or the adjoining proprietors or residents.

§ 609. The poles used as herein provided shall be of sound timber, not less than five inches in diameter, at the upper end, straight, shapely and of uniform size, neatly planed or shaved, and thoroughly painted with two coats of lead and oil paint, of such color as may be directed by the board of public improvements, and be supplied with iron steps, commencing twelve feet from the surface of the ground and reaching to the arms supporting the wires, tubes or cables; said wires, tubes or cables shall be run at a height not less than twenty-five feet above the grade of the street. Whenever the poles are erected on a street they shall be placed, in all cases when practicable, on the outer edge of the sidewalk, just inside the curbstone and on the line dividing the lots one from the other, and in no case be so placed as to obstruct the drainage of the streets, or interfere with or damage in any way the curbstones, trees or other public or private property on the line of the street or alley or public place where such pole shall be erected.

§ 610. Any person or persons, corporation or association having made excavations in the streets, alleys or public places of the city of St. Louis for the purposes aforesaid, shall replace the streets, alleys or public places in such manner and in accordance with such regulations as may from time to time be prescribed by ordinance, or by the board of public improvements, and to the satisfaction of the street commissioners.

§ 611. The right is hereby reserved to the board of public improvements at any time to direct any alterations in the location of said poles, and also in the height at which the wires, tubes or cables shall run; but before any alteration is made, at least five days' notice in writing shall be given to the person or persons, or the president or the officer in charge of the company affected by the proposed alteration, and reasonable opportunity shall be afforded the representative of such company, or any citizen interested, to be heard in regard thereto. But when any such alteration shall be ordered, the said company shall within five days thereafter commence such alterations and complete the same as soon as practical thereafter; and upon failure so to do; it shall be deemed guilty of a misdemeanor, and punished as hereafter provided.

§ 612. No person or persons, corporation or association, shall be entitled to any of the privileges conferred by this article, except upon the following conditions: That said person or persons, corporation or association, before

city, as by respondent alleged, or under any other provision of the charter of said city.

"Relator further shows to the court that by reason of the exemption contained as aforesaid in section 8 of said act of March 2, 1857, relator's charter as granted in and by said act of 1857 and as subsequently amended by the act of March 26, 1868, hereinbefore mentioned, was and is a contract by the State of Missouri with relator, which was not nor is subject to alteration, suspension or repeal by the State of Missouri

---

availing himself or itself of any of the rights or privileges granted by this article shall file with the city register his or its acceptance of all the terms of this article, and agree therein that he or it will file with the comptroller of the city, on the first days of January and July of each year, a statement of his or its gross receipts from his or its business arising from supplying electricity for light or power for the six months next preceding such statement, which shall be sworn to by such person or persons, or the president or secretary of such corporation or association; and further agree that he or it will, at the time of filing said statement with the comptroller, pay into the city treasury two and one half per cent on the amount of such gross receipts up to the year eighteen hundred ninety, and five per cent on the amount of gross receipts thereafter. And said person or persons, or corporation or association, shall, at the time of filing said acceptance, also file with the city register his or its penal bond in the sum of twenty thousand dollars with two or more good and sufficient securities, to be approved by the mayor and council, conditioned that he or it will comply with all the conditions of this article, or any ordinance which may be hereafter passed, regulating the placing of wires, tubes or cables in the streets and alleys for the purposes named therein; that he or it will comply with all the regulations made by the board of public improvements having reference to the subject embraced in this article or any ordinance herein named; that he or it will make the statements and payments required by the provisions of this section, and will save the city of St. Louis harmless and indemnified from all loss, cost or damage by reason of the exercise of any of the privileges granted by this article or any ordinance which may be hereafter passed relating to the subject-matter of this article.

§ 613. Any person or persons, corporation or association which, or any president, manager, superintendent or officer in charge of any corporation or association who shall violate or fail to comply with any of the provisions of this article, shall be deemed guilty of a misdemeanor, and upon conviction thereof, be fined not less than fifty dollars, nor more than five hundred dollars.

§ 614. The city reserves the right to alter, amend or repeal this article at any time.

or by any municipality thereof; that said city of St. Louis had not nor has lawful power by ordinance or otherwise to impair the obligation of said contract, nor to abridge or inter-fere with the full exercise by relator of any corporate fran-chise thereby granted to it; that the enforcement against said relator of said provisions of said ordinances of said city of St. Louis would be a denial to relator of its corporate rights and franchises aforesaid, and would impair the obligation of the said contract of the said State of Missouri contained in re-lator's charter as amended, and would be in contravention of section 15 of article II of the constitution of Missouri, 1875, forbidding the general assembly to pass any law impairing the obligation of contracts, and also section 10 of article I of the Constitution of the United States, forbidding any State to pass any such law, each of which constitutional provisions is hereby referred to and relied on by relator for the protec-tion of its corporate rights and franchises aforesaid in this behalf.

"Relator further shows to the court that the only condition annexed by its charter, as amended, to the exercise by relator of its right to establish and lay down in said city all pipes, fixtures or other thing properly required in order to carry on relator's said lighting business, is that the same shall be done with as much dispatch and as little inconvenience to the public as possible, and avers not only that in making its arrange-ments and preparations to lay its wires under ground along and under the streets of said city as in its petition in this behalf alleged, and in applying to respondent as street com-missioner of said city for a permit to make the necessary exca-vation therefor, relator has fulfilled every condition to which it was or is lawfully subject in that behalf, but also that respondent in refusing to relator such permit did not allege as a ground for such refusal, nor did in fact refuse such permit for the reason that by laying its wires under ground in the manner by it proposed relator would cause any inconvenience to the public, but expressly and unconditionally refused to permit relator to make any excavation in any street of said city.

" Relator shows to the court that, as against this relator, the said ordinances and provisions above mentioned are not valid, legal or binding enactments, nor constitute any defence to this proceeding:

" Because, as relator avers, said provisions are not, so far as relator's rights are concerned, lawful or reasonable regulations of the use of the streets of said city, but were intended to and do prohibit relator from exercising its said charter rights and powers except upon compliance by relator with conditions which the city of St. Louis has not, nor has the municipal assembly thereof, any lawful right or power to impose on relator in that behalf, including as one of said conditions that relator shall first be duly authorized thereto by the municipal assembly, thereby impairing the obligation of the contract contained in relator's charter as amended.

" Because the enforcement against relator by said city or any officer thereof of the conditions prescribed by said ordinances would not be a lawful or reasonable exercise of the power of said city under its charter to regulate the use of its streets or of the police power of said city, but is an attempt by said city under control of its charter powers to compel relator to enter into the obligations and to pay to said city, from time to time, the tax of ' five ' per cent upon the gross annual receipts from relator's business prescribed by section 590, article II, chapter 15, of the Revised Ordinance 1887, reënacted as section 612, article II, chapter 15, of the Revised Ordinance 1892, above mentioned; forasmuch as it is provided by said section 590, article II, chapter 15, of the Revised Ordinance 1887, reënacted as section 612, article II, chapter 15, of the Revised Ordinance 1892, that no person or persons, corporation or association, shall be entitled to any of the privileges conferred by said article II, chapter 15, except upon fulfilling the several conditions in said section 612 prescribed, as hereinbefore set forth.

Because among the conditions prescribed by said section 590, reënacted as section 612, relator would be compelled, before availing itself of any of the rights or privileges mentioned in said article II, chapter 15, Revised Ordinance 1887,

reënacted as article II, chapter 15, Revised Ordinance 1892, to file with the city register its penal bond in the sum of twenty thousand dollars, conditioned that relator will comply with all the conditions of said article II, or with any ordinance which might thereafter be passed, and will comply with all regulations which may be made by the board of public improvements having reference to the subject-matter embraced in said article II or any ordinance therein named; all which requirements and conditions are a denial of relator's rights under its charter and impair the obligation of the contract contained therein as aforesaid.

"Because said article II, chapter 15, Revised Ordinance 1887, reënacted as article II, chapter 15, Revised Ordinance 1892, purports to authorize the board of public improvements of said city, in granting a permit for the use or occupation of the streets, alleys and public places of said city for the purposes therein mentioned, to prescribe such restrictions, regulations and qualifications as said board may think fit in respect of the use of said streets, alleys and public places, and requires every person or corporation obtaining such permit, as a condition of availing itself of the privileges mentioned in said article II, to agree to comply with all such regulations made by said board, whereas the power to regulate the use of the streets of said city, granted — clause 2, section 26, of article III, of its charter — is granted only to the mayor and assembly of said city, to be exercised by ordinance not inconsistent with the constitution or any law of this State or with said charter, and does not authorize the said mayor and municipal assembly or either of them, by ordinance, or otherwise, to delegate to the board of public improvements of said city the power to make regulations for the use of said streets. Wherefore, relator says, that said requirements and said condition are unlawful and void.

"And relator says that the several conditions and requirements prescribed in said article II, chapter 15, Revised Ordinance 1887, as amended and reënacted in article II, chapter 15, Revised Ordinance 1892, are not independent of each other, but are so framed as to subject relator, its officers and

agents, to the penalties prescribed in section 591 of Revised Ordinance 1887, reënacted as section 613 of Revised Ordinance 1892, unless, before placing along, across or under any street of the city of St. Louis, any wires, such as hereinbefore mentioned, it, said relator, shall not only have obtained authority so to do from the municipal assembly of the city of St. Louis, but shall also have filed in the office of the board of public improvements of said city an application therefor, such as prescribed in section 583, Revised Ordinance 1887, reënacted as section 605, Revised Ordinance 1892, and shall have obtained a permit therefor from said board with such restrictions, regulations and qualifications as by it prescribed, and shall also have filed with the city register its acceptance of all the terms of said article II, chapter 15, and shall therein agree as required by section 590, Revised Ordinance 1887, reënacted as section 612, Revised Ordinance 1892, to file with the comptroller of said city sworn semi-annual statements of its gross receipts from its business, and to pay to the city treasurer a tax of five per cent upon the amount of such gross receipts, and shall also have filed with the city register its bond in the sum of twenty thousand dollars, conditioned as prescribed in said section 590, Revised Ordinance 1887, reënacted as section 612, Revised Ordinance 1892 ; all which requirements and conditions are a denial of relator's rights under its charter and impair the obligation of the contract contained therein as aforesaid."

To this traverse respondent filed a general demurrer, assigning also special grounds.

Subsequently the city of St. Louis was made a party; entered its appearance; and adopted as its own the return of the street commissioner and his demurrer to the traverse.

The demurrer was then sustained by the Supreme Court, "for the reasons given in the opinion heretofore rendered in this cause, to which reference is hereby made as a part of this judgment," and judgment was again entered denying the peremptory writ.

A writ of error from this court was allowed by the Chief Justice of Missouri. The opinion of the state court forms part of the record and is reported in 130 Missouri, 10.

The court in that opinion stated that on the pleadings the following issues of law were fairly framed :

"*First*. Is the act of March 26, 1868, unconstitutional as being in conflict with section 2, article VIII, of the constitution of Missouri of 1865 ?

"*Second*. Is said act void as being in conflict with section 25 of article IV of said constitution ?

" *Third*. Did the charter of relator expire by limitation at the end of thirty years from the date of the act of March 2, 1857 ?

"*Fourth*. Do the powers granted relator include the right to manufacture, sell or distribute electricity for lighting purposes ?

" *Fifth*. Has relator the right, under its charter, to place its wires under ground without the assent of the municipal authorities and without compliance with the requirements of the valid ordinances of the city ? "

But the court declined to express an opinion on "any question involving the right of relator to exercise the rights, or enjoy the franchises which appear to have been granted under the acts of the general assembly mentioned in the statement ; " or " to inquire whether the right to use electricity for making light was included under the terms 'substance or material' as used in the charter," and confined itself " to the question whether relator has a vested right to place its electric wires under the surface of the streets without the assent of the municipal authorities thereof and without compliance with valid ordinances of the city."

And this question, for reasons given, the Supreme Court determined in the negative, and held that " respondent, under his official duties as street commissioner, properly refused to grant the permit demanded, unless relator first complied with the requirements of the valid ordinances then in force."

*Mr. Henry Hitchcock* for plaintiff in error.

*Mr. W. C. Marshall* for defendants in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Mandamus lies to compel a party to do that which it is his duty to do, but can confer no new authority; and the party to be coerced must have the power to perform the act. *Browns-ville* v. *Loague*, 129 U. S. 493, 501.

On the facts disclosed by the record, was it the duty of the street commissioner to issue a permit to the company to make excavations on Broadway so that it might place electric wires under the surface of the street?

The Supreme Court of the State held that it was not the duty of the street commissioner to do so. Did that court in so holding give effect to ordinances impairing the obligations of the contract created by the company's charter?

Assuming the charter to be in force, as contended, the company was authorized to light the city, and to lay down pipes for that purpose, " with as much dispatch and as little inconvenience to the public as possible." It originally furnished light by means of gas through underground pipes, and when electricity came into use it furnished electric light through overhead wires. It now sought to put these electric wires under the surface; and it insisted that it had a vested right to do this without being controlled by the municipal authorities.

Subsequently to the passage of the acts of 1857 and 1868, a city charter had been adopted, whereby the State vested the city with the power to regulate the use of the streets, and pass ordinances deemed expedient " in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures."

The board of public improvements of the city of St. Louis, consisting of a president, the street commissioner, the sewer commissioner, the water commissioner, the harbor and wharf commissioner and the park commissioner, has existed for many years under the charter and ordinances of that city. Each of these commissioners is the head of the department indicated by the title of the office, and has special charge thereof, but subject to the general control of the board, and the board is charged with the duty, among other things, of furnishing data and information to the municipal assembly of the city in respect of matters with which it is called upon

to deal; preparing and recommending ordinances for the improvement and lighting of the streets; and establishing regulations for excavations and the laying of gas pipes in the streets, etc., etc., chap. 33, Rev. Ord. 1892, p. 976; chap. 32, Rev. Ord. 1887, p. 893; chap. 32, Rev. Ord. 1881, p. 716.

The street commissioner had primary jurisdiction over streets and highways, and § 568, Article I of chap. 15 of the Revised Ordinance of 1887, which article treated of excavations in streets and public places, for various purposes, provided that "No person shall make or cause to be made any excavation on any public street, highway or alley, without written permission of the street commissioner so to do, except public work done under the authority of the water or sewer commissioner, who at the time of ordering any such excavating shall notify the street commissioner of the same."

By §§ 581, 582, 583, *et seq.*, Article II of the same chapter, wires, tubes or cables carrying electricity for the production of light or power were to be placed above or below the surface of the ground of streets, alleys or public places, and secured in such manner as prescribed by the board of public improvements, and that board, on the filing of an application stating the streets, alleys and public places desired to be occupied and the manner in which the wires, tubes or cables were to be secured, were authorized to grant a permit for such occupancy, with such restrictions, regulations and qualifications as the board might designate, etc., etc. These were sections of Ordinance No. 12,723. (See Revised Ordinance 1887, p. 652.)

Section 590, Article I, chap. 15 of the Revised Ordinance of 1892, was the same as § 568 of Revised Ordinance of 1887, and §§ 603, 604, *et seq.*, of Art. II of that chapter, quoted *ante*, corresponded substantially with sections 581, etc., of the Ordinance of 1887. (Revised Ordinance 1892, p. 660.)

Section 2721, chap. 42 of the Revised Statutes of Missouri of 1889, (vol. 1, p. 693,) provided: "Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, across or under any of the public

roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters; *Provided,* Any telegraph or telephone company desiring to place their wires and other fixtures under ground, in any city, shall first obtain consent from said city through the municipal authorities thereof."

The company asserted by its pleadings that it had never accepted the provisions of Ordinance 12,723, and the subsequent ordinances, and had never obtained the consent of the municipal assembly to occupy the streets with electric wires laid under their surface.

Nor had the company ever applied to the board of public improvements for a permit to occupy Broadway with electric wires laid under the surface of that street.

But the company asserted that the only limitation on its power to so occupy the streets was that the work should be done " with as much dispatch and as little inconvenience to the public as possible."

And, admitting that it sought to excavate with the view to occupy the street with electric wires laid under the surface, the company demanded the writ of mandamus to compel the street commissioner to issue a permit allowing it to excavate for that purpose.

The Supreme Court held that the grant of the State to the company, " though construed to include the right to use electricity for illuminating purposes in respect to such right was taken subject to reasonable regulations as to its use, and the power to regulate has been delegated to the city of St. Louis. Under its general public power the city has the right to require compliance with reasonable regulations as a condition to using its streets by electric wires."

In view of the want of knowledge of the art of producing light by electricity when the franchise was granted, the court thought that " it would be most unwarrantable to imply, not only that relator had the right under the general words used in the act of incorporation to use electricity for lighting purposes, but that it also had the right to adopt its own methods for exercising that power, regardless of the paramount rights

of the public to the use of the streets. The power delegated
to the city to regulate the use of its streets existed before the
art of lighting by electricity was known, or at least before
relator adopted it, and the art should be exercised, if at all,
under the powers thus in force when it was brought into use."

Considering the danger to life and property from electric
wires when charged, it seemed to the court too plain for argu-
ment that the city should have the right to direct the manner
in which their use should be exercised, and especially when
more than one method was open, and the rights and safety of
the public were more or less affected by either.

Again, many companies used electric wires for various pur-
poses, and to accommodate them all and prevent monopolies
in the use of the streets it appeared absolutely necessary that
the municipal authorities should have the right to direct the
manner in which wires should be placed under ground.

The court was of opinion that it would be time enough for
the company to complain when its rights were distinctly in-
fringed, and held that the street commissioner "properly
refused to grant the permit demanded unless relator first com-
plied with the requirements of the valid ordinances then in
force."

Obviously the Supreme Court declined to enter on a dis-
cussion as to what were and what were not valid ordinances,
as respected the company, because the record showed that the
company denied that it was subject to any control by the
municipal authorities, and claimed that all that was required
of it by its charter was to do the work with as much dispatch
and as little inconvenience as possible.

It had made no application to the municipal assembly,
directly or through the board of public improvements, for
authority to proceed.

It had not filed any application with the board of public
improvements giving details of the streets it wished to occupy,
and the manner in which the wires, etc., were to be secured,
supported and insulated, and a plat of the route; nor asked
that board for a permit for the occupancy it desired.

Whatever objections the company may have been entitled

to raise to particular provisions of the ordinances, in denial of their applicability or validity, it took no action whatever, so far as this record shows, calculated to bring such matters to a distinct issue.

The street commissioner had no power under the charter and ordinances to issue the permit requested in the absence of the assent of the board of public improvements, which had general control; and the court could not command him to do that which it was not his official duty to perform.

Judgment to that effect in itself involved no Federal question, for confessedly there was no contract right that leave to excavate should be given by a particular officer; but we concur with the conclusion of the Supreme Court that the company was subject to reasonable regulations in the exercise of the police powers of the city, and so far as that involved any Federal question, such question was correctly decided. *New York* v. *Squire,* 145 U. S. 175; *St. Louis* v. *Western Union Telegraph Company,* 148 U. S. 92; 149 U. S. 465.

We are unable to accede to the contention that the company was entitled by contract with the State to lay electric wires under ground without reference to the directions or regulations of the city on that subject; or that the street commissioner was obliged to permit it to excavate the streets for that purpose without the assent of the board of public improvements or of the municipal assembly, or effort to obtain either, on the mere averment of the company that it fears it might thereby subject itself to requirements from which it insists it was exempted by the terms of its charter.

If the company, as it asserted, possessed the right to place electric wires beneath the surface of the streets, that right was subject to such reasonable regulations as the city deemed best to make for the public safety and convenience, and the duty rested on the company to comply with them.

If requirements were exacted or duties imposed by the ordinances, which, if enforced, would have impaired the obligations of the company's contract, this did not relieve the company from offering to do those things which it was lawfully bound to do.

The exemption of the company from requirements inconsistent with its charter could not operate to relieve it from submitting itself to such police regulations as the city might lawfully impose. And until it had complied, or offered to comply, with regulations to which it was bound to conform, it was not in a position to assert that its charter rights were invaded because of other regulations, which, though applicable to other companies, it contended would be invalid if applied to it.

The Supreme Court of Missouri did not feel called on to define in advance what might, or might not, be lawful requirements; and there is certainly nothing in this record compelling us to do so.

It must be remembered that the case does not come before us from the Circuit Court. This is a writ of error to revise the judgment of the highest tribunal of a State, and this we cannot do unless Federal questions have been erroneously disposed of.

*Judgment affirmed.*