COLLINS A. WEAGE *et al.*

*v.*

THE CHICAGO AND WESTERN INDIANA RAILROAD CO. *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 11, 1907.*

1. MUNICIPAL CORPORATIONS—*a city has power to authorize use of street for railroad track elevation.* The authority of a city over its streets and alleys embraces the power to require the elevation of railroad tracks laid in public streets and alleys, and carries with it the power to vacate, close or permanently obstruct any street for such purpose.

2. SAME—*when use of street for track elevation is not a diversion of dedication.* A mandatory track elevation ordinance allowing the use, for its full width, of portions of a street in which a railroad company has a perpetual easement for its tracks, to enable the company to comply with the provisions of the ordinance, does not effect a diversion of such street from the purposes of its dedication such as works a reversion of the fee to the original owner and his grantees.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

This suit was begun by plaintiffs in error filing their bill in chancery in the circuit court of Cook county against the Chicago and Western Indiana Railroad Company, as sole defendant. Subsequently an amended bill was filed making the city of Chicago also a party defendant. The amended bill is a very voluminous document, covering more than sixty pages of the abstract, and we shall not attempt to set out its allegations even in substance, but will endeavor to state enough of the grounds upon which it was based and the grievances complained of in said bill to make clear and intelligible the nature of the controversy and the questions involved.

The bill, among other things, alleged that the Chicago and Western Indiana Railroad Company, which will be hereinafter referred to as the defendant in error, was about the year 1880 authorized by the town of Lake (now a part of

the city of Chicago) to enter upon and take possession of a portion of Wallace street and other streets and alleys, to be used by it in laying at grade two tracks and operating trains and cars thereon, and that after the town of Lake became a part of the city of Chicago said authority or permit was continued to defendant in error without further change. The bill alleges that the permit or authority to defendant in error to so occupy or use said streets was not exclusive but was in conjunction with the public; that in October, 1899, the city of Chicago passed an ordinance ordering and requiring defendant in error to elevate its tracks in the city of Chicago between certain points; that the said ordinance permitted defendant in error to wholly monopolize and use Wallace street from Forty-ninth to Seventy-second street, except the west twenty feet thereof between Forty-ninth and Sixty-third streets, and portions of certain other streets named. The bill averred that the track elevation ordinance vacated the streets and portions of streets wholly given over to defendant in error to the purpose of elevating its tracks, and that when said streets were vacated the fee in said streets reverted, where there had been a statutory dedication, to the parties who dedicated them or their heirs, and where there had been a common law dedication, to the abutting property owner.

There are thirty-two complainants to the bill. They do not claim title to the lands in controversy as tenants in common and are not all interested in the same land. The claim of all of them, except Henrietta A. Boal, is, as we understand the bill, based upon ten different statutory dedications by as many different parties, and as to Henrietta A. Boal, her claim is as owner by devise of abutting property from the original owner, who made a common law dedication of the street. No relief was asked against the city of Chicago, but the prayer of the bill was for an injunction restraining the defendant in error railroad company from trespassing upon the lands claimed by complainants and from running

trains over said lands, and from erecting walls or other structures for the purpose of elevating its tracks thereon; or, in the event the court should be of opinion that by reason of defendant in error being a common carrier it should be allowed to pay plaintiffs in error the value of the land claimed by them and the damages caused, that a commissioner or jury or some other body be selected by the court to hear and determine such claims of damages after the court had determined the title, and that the full sum of damages for the value of said property be paid to the complainants. No question of damages for obstructing ingress to and egress from property abutting on the street is involved in this litigation.

A demurrer was sustained to the amended bill, and complainants electing to stand by said bill, it was dismissed by the court, and the record has been brought here by writ of error for review.

WILLIAM M. & WILLIAM S. JOHNSTON, (EDWARD H. MORRIS, of counsel,) for plaintiffs in error.

WILLIAM J. HENLEY, and E. P. H. WEST, (EDGAR A. BANCROFT, of counsel,) for defendant in error the Chicago and Western Indiana Railroad Company.

WILLIAM D. BARGE, for defendant in error the city of Chicago.

Mr. JUSTICE FARMER delivered the opinion of the court:

We are of opinion the demurrer was properly sustained. The averments of the bill do not make a case that would justify the interposition of a court of equity, for the reason that if the parties have any remedy a court of law would afford them complete and adequate relief. A considerable portion of the briefs and argument of counsel is devoted to an able discussion of this question, but as we think the de-

murrer was properly sustained on the further ground that the allegations of the bill do not show a case where the parties are entitled to any relief, either at law or in equity, we prefer to base our decision on that ground, and a discussion of the first proposition is therefore unnecessary.

It appears from the allegations of the bill that defendant in error had by authority of the municipality occupied and used the streets mentioned in the bill, or portions thereof, by double tracks, upon which its trains were operated, for about twenty years prior to the passage of the ordinance in October, 1899, requiring it to elevate its tracks. The ordinance required the tracks to be laid upon an embankment composed of sand, cinders, slag, clay, gravel, loam, broken stone, etc., and that whenever, on account of the height of the embankment, it became necessary to confine it, retaining walls of stone, concrete or brick masonry should be built on either side thereof, of a sufficient height to properly protect said embankment or right of way of the railroad, and the bill avers that defendant in error was constructing in the streets mentioned an embankment fifteen feet high, enclosed by solid walls of masonry on either side, upon the top of which embankment its tracks were to be laid. Said track elevation ordinance also contained this provision: "Any and all portions of any streets, alleys or avenues extending into or across any of said lines of railway within the limits hereinbefore provided for the elevation of said road-beds, or any of them, except the streets and avenues enumerated above in section 4 and in which subways are required to be constructed, shall be and the same are hereby discontinued and vacated under the elevated road-beds and tracks in this ordinance described and within the limits of the right of way of any of said railway companies, and the city of Chicago shall at any time take any proceedings essential to perfect or effectuate such vacation."

Plaintiffs in error contend that when said ordinance was adopted, which, it is alleged, was done by more than a

three-fourths vote of the city council, it amounted to a vacation of the streets and portions of streets attempted to be set apart and turned over to defendant in error for its exclusive use and benefit; that said city council had no authority to authorize the exclusive occupation and use of said streets by defendant in error; that said city held said streets in trust for the use and benefit of the general public and had no authority to turn them over to defendant in error, and that when the city, by its ordinance, declared them vacated, said streets reverted to and became the property of the parties who dedicated the streets, or their heirs, devisees and grantees.

It is well settled law that a city holds its streets in trust for the benefit of the public and cannot authorize their obstruction or vacation for the exclusive use and benefit of private individuals or corporations. It has also been held in this State ever since the early case of *Moses* v. *Pittsburgh, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 515, that laying railroad tracks in public streets and operating cars thereon is a legitimate use of such streets, and the power to grant it is vested in the municipality. That power had been exercised in this case, and by virtue of it defendant in error had constructed tracks in, along and across the streets mentioned, and operated its trains and cars thereon for a period of twenty years before the commission of the grievances complained of in the bill. This court has held that the authority of cities over its streets embraced the power to require the elevation of railroad tracks in public streets and alleys, and this power carries with it the authority to vacate, close or permanently obstruct such streets and alleys. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 217 Ill. 594; *Summerfield* v. *City of Chicago,* 197 id. 270.) The basis of this power and the necessity for its exercise is the protection of human life and the promotion of the public convenience and welfare. It does not rest upon and cannot be exercised solely for the benefit of the rail-

road company. Whatever may have been the nature and
extent of the right of defendant in error to use and occupy
the streets, in conjunction with the public, prior to the adop-
tion of the track elevation ordinance, such right was lawful
at the time. The elevation was ordered by the city coun-
cil, not for the benefit of the railroad company, but for the
public protection, welfare and benefit. The bill alleges the
distance north and south between Forty-ninth and Seventy-
second streets was two and three-fourths miles, and that in
traversing that distance defendant in error's tracks crossed
a large number of east and west streets. At all of these
crossings, except some five or six, as we understand the bill
and ordinance, defendant in error was required to construct
and maintain crossings underneath its tracks for the use
of people on foot or by other conveyance than steam rail-
road. It is evident that to make this elevation in the man-
ner and for the number of miles required by the ordinance
would involve the expenditure of a very large sum of money
by the railroad company. This could only be required by
the city on the ground that it was for the accommodation
and benefit of the public in the safe use of the streets. Was,
then, the use authorized by the track elevation ordinance
to be made by the defendant in error of the streets and parts
thereof named and described in the bill in violation of the
rule above quoted, that a municipality has no lawful au-
thority to vacate or obstruct its streets for the use and bene-
fit of private individuals and corporations?

We are of opinion this question must be answered in
the negative. The allegations of the bill are, that the said
streets and portions of streets were given over by the city
of Chicago to the sole and exclusive use of defendant in
error. But this was not done for its benefit. It does not
appear from the bill that permission or authority to elevate
its tracks was ever asked for by defendant in error, but, on
the contrary, the elevation was peremptorily commanded by
the city council. When the streets were dedicated origi-

nally, those who made the dedication, whether under the statute or at common law, must be presumed to have known that one of the uses to which the city might lawfully put said streets was the laying of tracks therein for the operation of steam cars and trains. When such authority has been granted to a railroad company and exercised by it for a number of years, until the city has grown so large and populous that the running of trains in and across public streets has become such an impediment to public traffic and such a menace to human life and public safety as to require the elevation of the tracks, we are of opinion the city council has the right to authorize the use by the railroad company of such portions of its streets as may be necessary for that purpose, and that such use of the streets is not a diversion of them to an unauthorized or unlawful purpose. In this case defendant in error had been given a perpetual easement in the street for its tracks and the operation of its trains thereon. The city council had not the power to take this right from it, but it did have authority to require it to elevate its tracks. In the judgment of the council such elevation made necessary the occupation of portions of the street its entire width by the embankment and structure upon which the tracks were to be laid. Defendant in error's tracks would, when elevated, still be in the street, and its right to continue to use the street was not terminated by the adoption of the ordinance. It would still lawfully occupy and use the street as a street. The necessity for defendant in error occupying the whole of or part of the street for the purpose of complying with the ordinance necessitated the exclusion of the general public therefrom. This was the purpose and effect of the ordinance. The exclusion of the public from the use of the street and the continuation of its use by defendant in error did not have the effect of causing a reversion to the dedicators, as would have been the case had the street been vacated for the purpose of abandoning its use entirely as a street.

This question, as it is here presented, has not been heretofore passed upon by this court, but the views we have expressed are in harmony with and supported by *Summerfield* v. *City of Chicago, supra.* In that case the city of Chicago had given the Rock Island Railroad Company permission, in the elevation of its railroad tracks, to occupy the whole of Stewart avenue with embankments at Seventy-second street. Summerfield owned a small tract of land abutting the south side of Seventy-second street on the east side of Stewart avenue. A sub-way was to be built under the tracks at Seventy-second street, but this sub-way could not be reached on Stewart avenue from the south on account of the embankment of the railroad company. It was agreed, therefore, between the railroad company and the city of Chicago, that the latter would condemn a portion of Summerfield's land off the west side sufficient to allow Seventy-second street to be reached from Stewart avenue. It was contended in that case that the necessity for taking Summerfield's land arose out of the unlawful and unauthorized act of the city in giving the use of Stewart avenue to the railroad company, and for that reason no lawful authority existed for condemning Summerfield's land. In so far as authority existed in the city to devote portions of its streets to the use of a railroad company for the elevation of its tracks, the contention in that case was the same as in this case, and on that subject it was said in that case (p. 280) : "The great advantage to the public to be attained by the elevation of the tracks of railroads at street intersections of a city is too manifest to be questioned. Not only public convenience and the business of the community are advanced by the elevation of the tracks, but that which is by far the more important, the citizen is secured from the many dangers which imperil life and limb where the trains of railroad cars cross street intersections at grade. The use of a street by a railroad, though lawful and legitimate, to some extent obstructs the street and to a degree deprives

the citizen of the full and unrestricted use of it. That is inevitable. The elevation of the tracks of a railroad can not be accomplished at any street intersection, by any means or appliance now known to engineering skill, without placing something in the street that to some extent obstructs the use of the street by the general public. * * * Though the walls of the sub-way and the retaining and lateral walls, made necessary by that plan of elevation, occupied more of the surface of the street than would have been occupied by the pillars and foundation of the pillars had the plan been adopted of elevating the tracks by means of a bridge or viaduct, and therefore· excluded the public from the street to a greater extent, still the question of the exclusion of the public was one merely of degree. The elevation of the tracks could not be secured without placing in the street some impediment to travel. It was indispensable that the surface of the street should be occupied by that which should serve as the foundation for the structure upon which the elevated tracks should rest. * * * The merits of the different methods for elevating the tracks could not be determined alone by consideration of the question of the amount of space which would be required by the pillars or the walls. The facilities of passage and of transit, the safety and convenience of the public, should be controlling factors in the determination of the manner of effecting the elevation of the tracks. When these considerations demand the adoption of a plan of elevation which makes necessary the appropriation of portions of the street to the structure necessary to support the elevated tracks, such appropriation of the streets cannot be deemed an unlawful diversion of the street to the use of the railroad company. The public interest and the necessities of the public being conserved thereby, there would be no diversion of public property to private use. * * * Nor can pillars or walls directed by the city council to be placed in the streets for the purpose of supporting elevated steam railway tracks at public street cross-

ings be declared to be the subjecting of the streets to an unlawful use. * * * The provisions of the amendatory ordinance authorizing the erection of the sub-way walls and the lateral and retaining walls in Stewart avenue can not, under the circumstances, be denounced as an unlawful perversion of Stewart avenue to the private use of the railroad company. The end to be attained was to accommodate the public business and increase the facilities and safety of transit along the street and the avenue and across the intersection thereof."

By the passage of the track elevation ordinance, therefore, the city did not divest defendant in error of the right to use and occupy the streets, and there was no reversion to the dedicators, their heirs, devisees and grantees.

The decree of the circuit court sustaining the demurrer and dismissing the bill is affirmed.　　　*Decree affirmed.*