## No. 8583.

## CITY & COUNTY OF DENVER ET AL. *v.* DENVER & RIO GRANDE RAILROAD COMPANY.

1. POLICE POWER—*Railway in Public Street.* Neither legislative enactment nor a delegation to municipal or other inferior authority can alienate, abrogate, or limit, the police power. The only limitation upon its exercise is that it shall be reasonable.

The duty of the public authorities to protect and care for the public carries with it the power to remove from the public street the tracks of a railway, whenever their presence is found to be injurious to the public, and this without regard to the character of the right or authority under which it was at first established and maintained.

Defendant maintained across one of the principal streets of the city of Denver, a track, directly in front of the entrance to the Union Station, to which some 1,500 to 2,500 persons resort daily. Upon extraordinary occasions this number is greatly increased.

The track was originally the main line of the defendant's railway, and was authorized by ordinance of the city; but for more than twenty years it had been operated merely as a switch, for the service of certain manufacturing and other interests, which may be satisfactorily served and accommodated by other tracks, open to use by defendant. In view of the growth of the city, and the increase of traffic at the intersection, the track was held a continuing nuisance, and menace to the public safety, and an ordinance of the city requiring its removal was approved.

2. EVIDENCE—*Judicial Notice,* taken that the time tables of a railway company are not immutable, and that trains do not always conform thereto, but arrive and depart at hours which are neither announced nor anticipated.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. I. N. STEVENS, City Attorney, Mr. GEORGE Q. RICHMOND, Assistant City Attorney, Mr. JACOB J. LIEBERMAN, Assistant City Attorney, Mr. JAMES A. MARSH, City Attorney and Mr. NORTON MONTGOMERY, Assistant City Attorney, for plaintiffs in error.

Mr. E. N. CLARK, Mr. R. G. LUCAS and Mr. J. G. MC-MURRY, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS action was brought by The Denver & Rio Grande Railroad Company to restrain the City and County of Denver from enforcing Ordinance Number 34, Series of 1914, by which the city seeks to compel the removal of a certain railroad track at the intersection of Seventeenth and Wynkoop Streets, in Denver. The trial court found the ordinance illegal and void, and an injunction was issued restraining the city from interfering with the track, reserving to it, however, the right to determine the extent of the powers and privileges of the railroad company, after the expiration of its charter. To this judgment the city assigns error, and brings the cause here for review.

For convenience the railroad company will be designated as plaintiff, and the city as defendant, as in the court below. Briefly, their respective contentions are as follows: The company alleges that it has authority by legislative enactment to occupy the street; that an ordinance passed in 1871, ratified by Congress in 1872, and further ratified by city ordinance in 1875, 1878 and 1886, granted it a franchise, and further, that the city is estopped to deny this right.

The defendant city denies that any such legislative authority was given to the company; asserts that the ordinance of 1871 was *ultra vires* and void; that the Act of Congress relied upon simply legalized the incorporation of the company, and gave it a right of way across public lands; that the ordinance of 1871, being *ultra vires* and void, could not be ratified by subsequent ordinances; that the line is now used as a switch track only, and not as a part of the main line, as originally projected; and that, regardless of whether the company had a legal right to establish the track, the city, in the exercise of its police power, can compel its removal.

The duty of governmental agents to prohibit whatever may be harmful to the public, or to secure such economic

and social conditions as a complex civilization may require, carries with it the power to remove the track, without regard to the character of the right upon which it was first established and maintained.   The nature of the company's business, clothed as it is with a public interest, brings it peculiarly within the scope of the police power, from a reasonable exercise of which, when properly set in motion, it cannot escape.   This rule is laid down in *Munn v. Illinois,* 94 U. S. 113, 24 L. Ed. 77.   In discussing the powers of government to regulate the use of private property the court, at page 124, said:

"When one becomes a member of society, he necessarily parts with some rights or privileges which, as an individual, not affected by his relation to others, he might retain.   'A body politic', as aptly defined in the preamble of the Constitution of Massachusetts, 'is a social compact by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good.'   This does not confer power upon the whole people to control rights which are purely and exclusively private, *Thorpe v. R. & B. Railroad Co.,* 27 Vt. 143, but it does authorize the establishment of laws requiring each citizen to so conduct himself, and so use his own property, as not unnecessarily to injure another.   This is the very essence of government, and has found expression in the maxim *sic utere tuo ut alienum laedas.*   From this source comes the police powers, which, as was said by Mr. Chief Justice Taney in the *License Cases,* 5 How. 583, 'are nothing more or less than the powers of government inherent in every sovereignty. * * * that is to say, * * * the power to govern men and things.'   Under these powers the government regulates the conduct of its citizens one toward another, and the manner in which each shall use his own property, when such regulation becomes necessary for the public good."

In reference to exercising police power upon railroads and kindred public service corporations the court said:

"This brings us to enquire as to the principle upon which

this power of regulation rests, in order that we may determine what is within and what is without its operative effect.  Looking, then, to the common law, from whence comes the right which the Constitution protects, we find that when private property is 'affected with a public interest, it ceases to be *juris privati* only.'  This was said by Lord Chief Justice Hale more than two hundred years ago, in his treatise *De Portibus Maris,* 1 Harg. Law Tracts, 78, and has been accepted without objection in the law of property ever since.  Property does become clothed with a public interest when used in a manner to make it a public consequence, and affect the community at large.  When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created.  He may withdraw his grant by discontinuing the use, but, so long as he maintains the use, he must submit to the control."

The track in question is laid directly in front of the entrance to the Union Station, at the foot of Seventeenth Street, one of the busiest streets in the city.  From 1,550 to 2,500 persons cross the track daily and upon extraordinary occasions, as conventions and the like, this number is greatly increased.  It was originally the main line of the company, but for more than twenty years has been used merely as a switch track, to serve certain manufacturing and other interests between Seventeenth and Nineteenth Streets on Wynkoop.  The company has right of ingress and egress to the Union Station over another route, and the few establishments between Seventeenth and Nineteenth Streets, now accommodated by the track may be readily taken care of over another route, should the track be abolished at the intersection in question.

It is contended by the company, however, that use of the track causes little, if any, inconvenience to the public, for the reason that it is used only at hours during which travel across the intersection is comparatively light.  It is well

settled that the only limitation to the exercise of the police power is that such exercise shall be reasonable. Railway timetables are not fixed and immutable, and any change in those governing the arrival and departure of trains at the Union Station may make the hours in which the track is now used by the company, those in which many trains are arriving and departing from the station. In any event trains do not always keep to schedule, but arrive and depart at unexpected times, making it beyond possibility to fix upon any hours when the intersection will be free from people going to or from the station. It is apparent, therefore, that the track at the intersection is a continuing nuisance and a menace. Situated as it is it can be nothing else. The evil may in some measure be mitigated by restrictions upon its use, but nothing short of removal will eradicate it. As to the power of the municipality to order its removal, Dillon on Municipal Corporations, at sec. 1269, says:

"Although a franchise or privilege to use the city streets is, when accepted and acted upon, a contract which cannot be impaired as well as a vested property right which cannot be taken except by the power of eminent domain, those franchises and privileges are not exempt from the exercise of the police power of the state either operating directly by legislative enactment, or by delegation to the municipality. It is the general rule that the right to exercise the police power cannot be alienated, surrendered or abridged, either by the legislature, or by the municipality acting under legislative authority, by any grant, contract or delegation, because it constitutes the exercise of a governmental function without which the state would become powerless to protect the public welfare. Hence, when a franchise or privilege is granted to use the city streets for a public service, the grantee accepts the right upon the implied condition that it shall be held subject to the reasonable and necessary exercise of the police power of the state, operating through legislative enactment, or municipal action. *New York v. Squire,* 145 U. S. 175, 12 Sup. Ct. 880, 36 L. Ed. 666; *St. Louis v. W. T. U. Tel. Co.,* 148 U. S. 92, 13 Sup.

Ct. 485, 37 L. Ed. 380; *Laclede Gas Light Co. v. Murphy*, 170 U. S. 78, 18 Sup. Ct. 505, 42 L. Ed. 955; *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1, 16, 19 Sup. Ct. 77, 43 L. Ed. 341."

And at sec. 1270:

"The basis of the exercise of the police power is the protection of human life and the protection of public convenience and welfare. Municipal regulations not having a fair relation to these subjects are unreasonable, but when they fairly tend to promote these objects, they are generally sustained. *Weage v. Chic. & W. I. R. Co.*, 227 Ill. 421, 81 N. E. 424, 11 L. R. A. (N. S.) 589; *Commonwealth v. Warwick*, 185 Pa. 623, 40 Atl. 93; *Commonwealth v. Philadelphia*, 23 Pa. Sup. Ct. 205."

In *Atlantic, etc., Ry. Co. v. Mayor, et al.*, 128 Ga. 293, it was held that a regulation requiring a railroad to change the location of its track was a legitimate exercise of police power, when such regulation is reasonable, and tending to promote the general welfare and convenience of the public. In McQuillin on Municipal Corporations the following rule is laid down at sec. 1682:

"In the control of street railroads reasonable rules may be laid down by the municipality to compel the removal of turnouts, the laying of switches, the construction of bridges, etc. So for the convenience and welfare of the public, a municipality may require the tracks of a railroad company to be shifted from one street to another, or from one part of the street to the other."

For twenty years the company has abandoned the track, as a part of its main line, and its use as a switch track has been permitted by ordinances passed from time to time. The growth of the city, the subsequent increase of traffic across the intersection, and its augmented importance as a thoroughfare, make it apparent that the municipality has justly concluded that it is in the interest of the public to restore the street exclusively to its original use. Viewing the interests of those served by the track on the one hand, and the rights of the public upon the other, and taking into

consideration the fact that those now using the track may be equally well accommodated in another manner, the ordinance for its removal is eminently reasonable.

In *Reinman v. Little Rock,* 237 U. S. 171, 50 L. Ed. 900, 35 Sup. Ct. 511, the question of municipal power to declare what shall be considered a nuisance is discussed as follows:

"While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the law-making power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment."

In *Delaware, etc., R. R. Co. v. Buffalo,* 158 N. Y. 266, 53 N. E. 44, the railway company had constructed certain abutments and piers in the city of Buffalo, to support a portion of their track. These abutments occupied about one-half of the street. In discussing a resolution of the common council ordering the removal of these abutments and piers the court said:

"It was urged by the learned counsel for the plaintiff that the city authorities have no right to forcibly remove this structure over the street. That depends upon the question whether or not it was an encroachment upon the public right, and an obstruction. If it was, the city had a right to remove it. If, by the increase of the population, or the increase of public travel, the street had become dangerous in consequence of the existence of the abutments and piers, the city would be clearly liable for any damages which persons, in the lawful use of the highway, sustained by accidents due to the presence of such obstructions in the street. * * * It is equally clear that the plaintiff cannot justify the occupation of the street upon the ground that the municipal authorities originally consented to the erection of the

structure. The common council of the city has no power to surrender a public street to the use of a railroad corporation."

The Supreme Court of the United States, in *N. Y., etc., Ry. Co. v. Bristol,* 151 U. S. 556, 38 L. Ed. 269, 14 Sup. Ct. 437, in discussing the power of the State Railroad Commission to require the railway company to remove a grade crossing, said:

"It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligations of contracts, or the deprivation of property without due process, or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. The governmental power of self protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury. *Beer Co. v. Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Fertilizing Co. v. Hyde Park,* 97 U. S. 659, 24 L. Ed. 1036; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Budd v. New York,* 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247."

Under the principles laid down in the authorities quoted, it is clear that the ordinance here being attacked by the railway company is a reasonable and constitutional one. The company must, therefore, give way to the paramount interest of the public.

Judgment reversed and cause remanded with instructions to dismiss it.

Decision *en banc.*